Good morning, Your Honors, and may it please the Court, my name is Steve Meschaki, representing GDC. Meschaki? Meschaki, yes. Thank you, sir. Review of arbitral awards is uniquely deferential. Courts must affirm such awards if arbitrators were even arguably interpreting or applying the contract, and this is so even if the arbitrators committed what this Court believes are serious or grave errors. Now, I know you know this, but I emphasize it because RSM views this case as turning on whether the tribunal correctly interpreted the term computational. This is wrong. The question is not whether the tribunal was correct, that the error was computational or not. Instead, the sole question before you is whether the tribunal even arguably interpreted that term. It did. That is the question, but as the district court ascertained it, how did the tribunal even arguably construe the word computational with what it did in its addendum? What the tribunal did was go through with this Court, we call it the Kemper test, but it went through the process that this Court set forth in Kemper, which is identify the task as interpreting the contract or the term, cite and analyze the text, and then frame the conclusions in terms of the contract. But it didn't really analyze the text at all. It just recited computational error. We have the power to correct computational errors. It never identified what the computational error was. I would disagree, Your Honor. I think the tribunal did go beyond that. It explained the parties' competing views of what that term means, and then it considered, for example, RSM's treatises, which interpreted that term very narrowly as meaning moving a decimal point or that sort of thing, not even . . . But they never identified any computational error. I mean, I read the thing, and I come away with it. They said it. They said it many times, but it sounds like Ipsy Dixit. Right. So, two things, Your Honor. First of all, no explanation was needed, and this Court said that very clearly in the CBA case. Recall that there was a union exhibit on an agreed practice, and the arbitrator corrected . . . They relied on the wrong exhibit. It was an exhibit that was actually a different CBA or whatever it was. It was a clear mistake, and the arbitrator identified it. I don't see what the mistake is here, other than they're doing a do-over. Yes. So, the mistake here, according to the Tribunal, was that this term, first of all, was undefined, and secondly, the Tribunal looked at computational as involving the determination of damages. I mean, and it looked at what the parties asked . . . it looked at what the parties jointly asked the Tribunal to do, and said, well, this is a very similar error. So what the parties jointly asked the Tribunal to do was to, first of all, provide a set off for overriding . . . Those were true computational errors. It was addition and subtraction. The set off wasn't even mentioned or referenced in the partial final award. So the parties, nonetheless, said GDC is entitled to a set off here for that amount, and furthermore, RSM is entitled to additional damages because you exclude mobilization or demobilization costs from the calculation of payout. So these clearly went beyond a math error. No question about it. And the Tribunal determined, well, that went beyond a math error. We surely have the authority to do that, and the Tribunal specifically referenced the interpretation of the wording. The Tribunal said we conclude, based on our interpretation of the wording of Rule 36, and specifically the term computational . . . Even if they're wrong, this is maybe a friendly question. Pardon? This may be a friendly question. Even if they're absolutely wrong in their interpretation of how their rules work, isn't that for them, and we can't fix it? That's exactly right, Your Honor, and this . . . So the question is then, set that aside, it's very deferential. When do they cross the line into being completely unsupportable? I mean, look, I read what they did in the addendum. They redid their findings on what they call Claim 1. They backed out $4 million in damages. They reversed their ruling that Claims 2 and 3 were moot, and they said, no, they're not really moot. We're denying relief to RSM. How is that computational under any definition of the word? And again, can they be so wrong that it's not even arguable, so that we can reach it as the district court did? Yes, I understand your question, Your Honor. The principle is this, that this court will only second-guess arbitrators if their reasoning is so unmoored to the contract language that they can't even be said to be interpreting it. That's how plain it has to be. And so, for example, in the Smith case, this court dealt with a provision that said arbitrators could amend an award within three business days. The arbitrator amended it over a month later, with no reference to the contract in the process. That wasn't even an attempt to interpret that provision. In other cases, ignoring contract language, Houston Lighting, the arbitrator didn't rely on the contract at all, but just on—he literally referenced his own experience as a labor arbitrator, as his sole rationale. So there was no attempt to interpret the contract at all. For example, in Baird, the employer had sole discretion to subcontract landscaping, and the arbitrator acknowledged that and said, well, but I don't think this subcontract really saved enough money. That was not an interpretation of the contract. It was the arbitrator imposing his own brand of industrial justice, his own view of what sound policy is. That's how unmoored it needs to be. By contrast, if the arbitrator is saying, I recognize what my job is, I'm interpreting this term, and I think it means X, that's the end of the story as far as this court is concerned. So it's okay if a computational error can basically swallow the general rule against reconsidering arbitral awards, because that's what this does, functus officio, or whatever the Latin fancy term is, the arbitrator's done once they render the decision. But not now, because they can define a computational error however they want to define it. They can, in fact, define the term computational, the undefined term computational. Even if it means a reconsideration and a revisiting of the award on the merits. Even if you believe it is completely wrong. Even if you believe it's— Not completely wrong. Even if it means they can evade what is a general limitation by the Federal Arbitration Act that they can't revisit their award once they've rendered it on the merits. Again, the only—it has to be such a plain limitation that it is not even an attempt to interpret the contract. And the examples I just gave you are evidence of that. If you need more evidence that the arbitrators themselves were concerned about this issue, there was an oral argument on this motion. And take a look at pages 1383 to 86 of the record, and Justice O'Neill is questioning our trial counsel, for lack of a better term, our trial counsel, and saying, well, I'm focusing in on this rule, and I'm looking at the term computation, and then I'm looking at what we adopted from RSM's, you know, post-hearing brief, and I'm—and she's questioning him about that. And she's laser-focused on that term. And so, there's no question this tribunal knew what its job was, defined it as needing to interpret that provision and apply that rule. And that's as far as it goes. And again, this Court has repeatedly said, when litigants like RSM come before it and say the arbitrator was quite wrong here, this Court has repeatedly said, don't talk to us about it. You bargained for the arbitrator's interpretation, not ours. And a good example is Kemper. In that case, the provision in the arbitration agreement said, you can't award consequential damages. And the arbitrator said, well, I think these are direct damages. And the disaffected litigant came in and said, under New York law, these aren't direct damages, these are consequential. And this Court said, don't talk to us about it. You pick this arbitrator. You decide an arbitration. You agreed. Be that as it may, and I don't really ascertain the other side's arguments to be questioning the award, the propriety of it. Of course, they won. I mean, I know they wouldn't. But what they're saying is, effectively, we didn't bargain when we signed up for arbitration for a computational to basically give the parties or the arbitral panel the right to reconsider on the merits and issue new opinion once they rendered their initial one. In other words, we've hidden in here a waiver of the finality of the award once it was made. I understand that that's their position, but again, they're just wrong. Let me go back. But how are they wrong? I just don't see that in the addendum that the tribunal issued. They just say, computational error, we have the power to do it. Maybe that's enough. It is enough. But you have to agree with me that this is well more than—I'm sorry. It's said in CWA that it's enough. Again, remember, it was that union exhibit. And the arbitrator said, I think this is a technical error, and then changed the result. In other words, in that case, union had won, and the AAA rules, actually both the labor rules and the commercial rules, not only lay out the grounds like Rule 36 does here for the amendment of an arbitral award, but they actually go beyond that and say the arbitrator should have no power to redetermine the merits of a claim that's been already decided. Yet the arbitrator did exactly that in that case. The arbitrator said, union, you won, and in the amendment, he said, union, you lose. And why? Because I made a technical error here. And this court said, don't talk to us about it. And furthermore, furthermore, the union said the arbitrator gave no explanation, no explanation whatsoever. Just like RSM is saying here, RSM is saying there's no explanation of what this term means, and there's no robust analysis. There's no reference to canons of construction or interpretive rules, et cetera, et cetera. And this court in CWA said, doesn't matter. The arbitrator said they were interpreting the term, and we're going to accept that. So this court's job ends when it determines, again, that the tribunal was determining that it identified the task as interpreting the contract. It's really a process-focused thing. We don't really have much of a job, do we? You don't. You don't. And the Supreme Court has said that very clearly. We don't get to decide if it's lawful. We don't decide if it was correctly followed their procedures. We don't get to decide much of anything. That's correct. Only that they had a process. That's right. That's right. OK. Well, I have a question about why this is under seal. I'm sorry. Why is this under seal in our court? People have come to our court and asked for relief. We don't normally seal things. The whole record is under seal, and that seems inappropriate. The arbitration agreements themselves said that they would be. Well, that's between the parties. But you've come to this court for relief, so why should it be under seal in this court? Your Honor, I don't have a problem with that. I actually asked opposing counsel if I could give you excerpts of a record of materials. OK, we may take that up later. I just don't understand why we would be under seal for the entire record. This is an open court, and you come to court. OK, thank you. I don't have any disagreement with that, Your Honor. Let me just finish by referencing the policy under the FAA. As you know, the FAA promotes arbitration as a more efficient and cost-effective procedure and method. RSM's approach here would tack judicial review onto most arbitrations and allow an appellate judge to routinely re-examine whether an arbitrator's interpretation was correct. Essentially, an arbitrator couldn't make any error of law. The court should reject this misguided approach and, again, should reverse the district court's order and remand to confirm the addendum. Thank you. Thank you. Good morning, Your Honors, and may it please the court. Tony Luchisano on behalf of RSM Production Company. RSM agrees that arbitrators who interpret and apply their contracts should be accorded substantial deference. But as this court has held, that deference runs out when what the arbitrators do is transgress clear contractual limits in a way that is not even rationally inferable from the contract. Here, the clear contractual limit was the term computational error. A narrow term means a mathematical mistake in the award, not substantive redeterminations of the merits. GDC does not, and I think still does not, provide any other interpretation of what that term means, even arguably. But why should we be parsing the term? If they say they're following that term, why isn't that good enough for our narrow cursory review? Because the essence test that Mr. Mishaki referenced asks whether the award, however arrived at, regardless of what the arbitrators said, is at its essence so disconnected from the contract that we know that what the arbitrators did was abandon their interpretive rule. Well, but they, I mean, it was connected to the contract because it was just an outgrowth of the initial interim award or whatever. It was a partial award, whatever they termed it. It was a little bit temporal, but they were clearly traveling under the same dispute, the same issues, the same arbitration agreement, the same rules. And they say, well, we're going to conclude we have the power. How does that not meet the even arguable or even arguably standard that you've got to surmount? So it was related to the contract in terms of they were resolving the fundamental substance of the contractual disagreement that had already been resolved. The part of the contract, and I think my friend agrees with this, the part that they had to tether it to, even arguably, rationally rooted is the term this court has used, was that computational error power. And Judge Wilson, you're right. There is no limiting principle to what I gather is their application of that term, which is it has to do with damages, and so you can redo the entire award. Well, the limiting principle is you've got what you contracted for. I mean, you agreed to arbitration, and the arbitration rules apply, and the arbitration panel applied the rules, or at least arguably applied the rules, so you're stuck with it. So I think it's true that they said they interpreted the rules. And if that were the test, it would be quite a different case. Well, but our standard, right, is did they even arguably interpret the rules? And they certainly said it throughout the addendum. They said that, but the even arguably interpret test, the essence test, is rooted in whether it's rationally inferable. And we know that because this court said so in Beard. There, my friend characterized it as a total offshoot of the arbitrator's own policy as if it was disconnected from the contract at all. But the arbitrators there referenced the agreement. They said, we've read the agreement. It's not in a vacuum, the whole agreement, and it gives us this power. And the court said, and this is a quote, simply referencing the agreement is insufficient for this court to uphold the award. The arbitrator must show that the award is rationally inferable in some logical way from the agreement. All of these cases, the CWA case, all of the cases in which the court rightly upholds award, there's a debate. There's a contractual term, and there are two sides to the debate. But Beard is very different. It's, they use something completely outside, they didn't make an error in the contract. They said, I'm going to decide on cost benefit or whatever. That's my own, I'm just going to do my own thing. And that's, and the arbitrator said, I'm doing my own thing. And this, they're saying, well, we're grappling with this contract, and then they perhaps get it egregiously wrong. So, they did say they were grappling with the contract, and the Kemper case, the sort of indicia of arguable determination, or arguable interpretation. Again, those are factors that can make it likely that what was going on was an interpretation. Here, of course, we have, as Judge Wilson, you said, none of the true indicia of interpretation. That the term computational error is given no meaning at all. It is one that it's hard to discern. Well, basically the question is, do they get a substantive do-over to reverse the way they initially ruled based on this language that they can make computational errors? And I mean, clearly they are grappling with the same claims, the same damages, the amount of damages that RSM could recover, and et cetera. And they put at the end of the addendum, I guess, that whole chart about summarizing who takes what under which claim or which. So, I mean, again, they say they can do that under computational errors. How do we question it? Let me isolate the damages and the error that actually was corrected, right? In the initial award, the tribunal adopted RSM's relief as to this payout claim. All three forms of the damages related to it. The $10.5 million, it interpreted, adopted Article 3.5 of the Farm and Agreement to entitle RSM. Right? That the calculation they performed, the 6.5 million, the 3.8 million, the 145,000, that added up to 10.5. That was correct. And there was never an error identified in the computation. The error, as I gather it, that had to have been corrected in order to back out that damages was RSM, are you entitled to this relief under the contract? And it went from one direction to the polar opposite. And- But if they call that a computational error, and they cite the rule, and the rule is in the contract, is that as far as we can go? No, not at all. Because- What's your case? What's your authority to support that we can go farther? It's the essence test itself. And so, dating back to Executone, and this is carried through to all of the cases, to CWA, to Beard, to Smith. If the award, however arrived at, is so disassociated with the text of the contract that it's not an arguable interpretation, then we can discern that what happened here was not interpretation at all. It was reaching a result that may well have been well-intentioned, or what they thought was right upon reconsideration of the merits, but it was not an interpretation of the term computational error. Because no one here can articulate a logical, a rationale to get from that term to what the tribunal did. But they get to decide what computational error means. And that's what they grappled with. They get to decide. Computational error can swallow the whole, because they get to decide under their rules, not our rules of civil procedure, but under the ICC rules, what computational error means. And that is what they did. And it's broad, and it swallows the whole, perhaps, but they, therefore, have that rule in the ICC. If that were the rule, Judge Elrod, this Court's cases would look a whole lot different. CWA, this Court did not just say, look, he looked at the AAA rules, he said it was technical, end of story. There, there was a, quote, colorable interpretation. It was, quote, debatable. And it made sense, because, as Judge Wilson, you pointed out, that the exhibit there, there was a technical slip-up in reading it. The, quote, merits framework of the award was kept consistent. And so, there was a debate. There was a robust debate over whether that error was, or whether that interpretation of the, of the rules was an arguable one. Is there an inconsistency in the addendum, or I guess the revised award, because the tribunal didn't disturb the February 1, 2016, payout date, right? Is there an inconsistency between leaving that in place, and what they did in the addendum, so that, that, does that make it un, infirm, or, are you even arguing that? No, to be clear, Judge Wilson, the addendum, and what they said the addendum was based on, is absolutely incompatible with what happened in the, the initial award. The, the, the claim one, as the, as the tribunal defined it, was all of RSM's damages related to a February 1st payout date. The claims two and three that it didn't reach were specifically for a June 1st, 2016 payout date that, that, that was not relevant because the tribunal had, had agreed with RSM on the royalty issue. So, the notion that, that claims two and three were somehow undecided, or, or suddenly became relevant again in the addendum award, doesn't make any sense, and is inconsistent with what the tribunal held. Obviously, we want to follow our case law. Can you please, very patiently, tell us what cases make you win again? Because I'm not clear what case law says what you say. So, I think Smith, which is a, a, an opinion, Judge Wiener, you were on the panel. There, it was a modification power in the contract that allowed a party, or that allowed the tribunal to modify awards within three business days. It did so a month later. Now, that's a stark deviation from the plain text of the, of the term, of the agreement. Mr. Michalki says, this case isn't like that at all. Did they say, we can do this a month later and cite the rule? They, they said, and this is a quote from the Smith opinion, the arbitrator said, it was, quote, consistent with the arbitration agreement of the parties and the intention of the drafter of the award. So yes, they pointed to the contract, just like in Beard, and that wasn't enough because we know that- But Beard said they were doing their own thing. He said, I'm doing my cost-benefit analysis, or whatever it was. Isn't that cost-benefit analysis? Yes, but, but the arbitrators did point to the, to the agreement and the whole agreement as allowing them to do that. So, I, I just resist the, the, the, the premise that, that Beard was, was, you know, didn't involve the pointing to the contract. Otherwise, the court wouldn't have said that simply referencing the agreement is insufficient for the court to uphold the award. This is more than simply referencing. This is grappling. I, I don't think it is, Judge Elrod, because- Judge O'Neill said she was grappling. I mean, she's, she's grappling out loud. So, the- A very experienced jurist is grappling out loud. Why isn't that some evidence of grappling? I, I think they were grappling, and it's reflected in the addendum award, with whether they made the right decision in the original final award. And that caused them, on reconsideration, quite clearly to re-decide the merits of the award. And, and we're not saying that was malicious or, or bad faith or anything like that. You said it was irrational. That's right. To the extent it is premised on the term computational error, no one in this room yet has argued for some rational link to why that term encompasses what the tribunal did. And when that's so, then what was happening had to have been something else. And it's reflected in the addendum award that they just thought JDC, GDC was right on reconsideration. But what the parties bargained for, and Judge Wilson, to your point, that there, there are limits on, on the power of, of the arbitrators to interpret and apply the contract. And here, the, the ICC rules were incorporated, among other reasons, for, for the, the finality and the value that they place in that. And for a addendum award that is so unrooted in the limited powers of that, of that computation, for, for it to, to diverge so wholly from that, is, it upsets the party's bargain. And this is squarely within the mold of cases like Smith and Beard. I, I want to just kind of focus in on Smith, because that's the sort of three business day versus a month. I think, as I understand, my friend, that if the arbitrators there had said, well, you know, three business days, a business day is more like, you know, a week and a half, I had them up, we've got a month. That would suddenly qualify as an arguable interpretation, because the tribunal said so. And I don't think that's a square, you can't square that with the essence. What if they said three business days is not now because we're in COVID and everything's locked down, so there's no business days? Would that be OK? I don't think so, because the plain text of that term, no one could. Well, the courts are closed. And so just like the courts are closed, the arbitrators closed. And so everything's closed. So I guess I'm hypothesizing a rationale that is so clearly unrooted from the text of the agreement. And if the three business days were a month or two months or three months, I mean. I thought COVID was a good example, because people did make those kind of arguments about access to justice and that sort of thing. Sure, there could be, I'm hypothesizing a rationale that no one can defend, right? OK. And so here we have a term that we still don't know the alternative definition for that encompasses what the tribunal did. And there is no, like in CWA there was a debate, here there is no debate. There is just a declaration that what was happening was an interpretation. And a award whose substance is so clearly, so inarguably divorced from the limited term computational error. I want to briefly address the agreed corrections in the award. That was, I think, the only rationale that Mr. Mushaki gave. That is a directly contrary inference to the fact that this could be a computational error. Those agreed corrections, of course, they were agreed. Arbitration is a bilateral contract. And you can vest the arbitrator with whatever power you'd like. But those were the heartland of clerical errors. The overriding royalty, the $152,000, RSM in its post-hearing brief requested that if it prevailed on the payout claim, that it was not entitled to those overrides. It was undisputed. And so the tribunal's adding of that at the agreement of the parties was perfectly consistent with the merits framework. It was the inadvertent mistake that is apparent on the face of the award. Let me ask you this. Entitlement to damages and the amount of damages that are appropriate are two separate concepts, aren't they? That's right, Your Honor. Well, why should we consider the tribunal's reduction in the amount of available damages a redetermination of entitlement to damages? So the reason that we know that it was a redetermination of the entitlement to damages is because if this was really just the way that these awards were organized and the subheadings and the labels, then what would have happened with the tribunal would have taken the $6 million that it kept, kept it under label one, and awarded the $4 million that it struck under labels two and three or whatever the case may be. But it didn't do that. It undid the $4 million and expressly declared GDC the prevailing party. So this wasn't even an arguable slip up in the map or the labeling. It was a fundamental undoing of what the tribunal did in the first award on the substance. And I don't hear my friend disagree with that is what actually happened. Judge Elrod on sealing, we, like Mr. Mushaki, only pursued sealing because of the confidentiality provisions in the agreement. Right. You can make whatever agreements, but it doesn't mean we agree. And we understand the court's presumption to judicial access, and we don't oppose the record being unsealed for that. Okay, thank you. Do you have anything else? I don't believe so, Your Honors. Okay, thank you. We have your argument. Thank you. Your Honors, once again, the tribunal didn't just say, this is computational. And again, if you look at the transcript, you will see Justice O'Neill, as Judge Elrod said, grappling with the issue. If you look at the addendum, at pages 1421 to 23, you will see that the tribunal went through in detail the party's counterarguments. Went through the treatises on how they interpreted this term. And discussed, once again, the party's agreement to make similar changes. Now, going back to those similar changes, those agreed corrections. First of all, there's nothing in the rule that distinguishes between agreed corrections by the parties and contested ones. Absolutely nothing. Rule says nothing about that. Well, the rule doesn't have to, because as counsel opposite said, this is a contractual arrangement. If both parties agree to something and agree to let the arbitrators do it, they've conferred the power on the arbitrators. Nonetheless, the arbitrators specifically said, we believe these agreed changes fall within the ambit of Rule 36. They said this even though the $152,000 offset that was given to my client, GDC, wasn't even discussed in the partial final award. So we're not talking about, you know, just making some clerical correction there necessarily. The rulings on claims two and three, first of all, there's no challenge here on appeal that RSM should have gotten anything under those claims. And had there been a challenge, it would mean that a ruling in favor of GDC becomes a ruling that the claims are moot. But the tribunal, remember, called this a clerical error. And, you know, similar to the Reign II case, the Reign II versus Conoco case, the tribunal, you know, looked at what it did in terms of what it adopted from RSM's proposed findings and conclusions and decided that it made a clerical error. So that's a separate issue. CWA— You're not here telling us that it's a clerical error. I'm not here telling you one way or the other. All I'm telling you is that the tribunal made its determination. The tribunal— What do we do with the inconsistency between the payout date of February 1, 2016, and what they did in the addendum to claw back the two categories of damages that I thought that the agreement between the parties would have dictated, if the payout date was February of 2016? I mean, there's an inconsistency between the two, or do you concede that? Yeah. So the tribunal, again, didn't change that date, as you know. They left, essentially, the liability ruling intact. But they said that it included two components of damages, the revenue components, that should have been part of that claim. That, incidentally, was consistent with the way RSM teed up those claims in its pre-hearing brief. And the site I give you for that is record at pages 1550 to 54. So the tribunal said that, essentially, the revenue claims had nothing to do with what the date of payout was. It was a claim that was unrelated to that. Whenever the date of payout was deemed to be, RSM was saying, well, we think we should have these damages, too. And the tribunal recomputed damages. It wasn't just RSM that said it. The tribunal actually said, yes, they're entitled to these three categories of damages, and gave explanation as to why in their original award. They just backtracked on that. They did do that, but they redetermined. Again, they said that computational error allows us to determine what damages flow from a claim under the contract. I'm out of time. Thank you. We have your argument. We appreciate the arguments on both sides. The case is submitted. The court will stand in recess until 9 a.m.